UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAIVIONTAE TYRELL JOHNSON,

        Plaintiff,

v.                                                Case No. 22-cv-849-pp

CHRISTOPHER SCHMALING,
BRADLEY FRIEND,
and CO TREVOR TRELLO,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND ALLOWING PLAINTIFF TO FILE AMENDED COMPLAINT**

        Daiviontae Tyrell Johnson, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to protect him from another incarcerated person and disregarded his asthma when they used incapacitating chemicals on him. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 2, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $12.88. Dkt. No. 7. The court received that fee on August 23, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

   A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names as defendants Racine County Sheriff Christopher Schmaling, Captain Bradley Friend and correctional officer Trevor Trello. Dkt. No. 1 at 1. The complaint alleges that all the defendants work at the Racine County Jail, where the alleged events occurred. Id. at 1–2.

The complaint alleges that on December 2, 2021, at around 5:15 p.m., Trello ordered the plaintiff to come out of his cell to receive his dinner tray in

the segregation unit common area. Id. at 2. As the plaintiff left his cell, another incarcerated person assaulted him. Id. The plaintiff alleges the incarcerated person "propped" open his cell door, allowing him to leave his cell and assault the plaintiff. Id. He says jail rules allow only one incarcerated person out of his cell at a time. Id. The plaintiff asked Trello later that evening "how this assault happen[ed]." Id. at 3. Trello told the plaintiff, "He F*** up because inmate had his door propped an[d] didn't pay attention to se[cu]rity s[ystem] if all doors were sec[ur]ed." Id. The plaintiff alleges that Trello's body-worn camera was on during this conversation. Id.

On December 4, 2021, the plaintiff filed a grievance about the incident to Sergeant Morris (who is not a defendant), the sergeant on shift at the time of the December 2, 2021 assault. Id. Morris responded on January 16, 2022 and told the plaintiff "it would be looked into by a deputy." Id. On December 8, 2021, the plaintiff wrote to a lieutenant (who is not a defendant) about the assault, but he did not receive a response. Id. On December 10, 2021, the plaintiff wrote to Captain Friend asking why the assault occurred. Id. Friend responded, "that incident will be looked into." Id.

The plaintiff says he suffers from post-traumatic stress disorder and anxiety since the assault. Id. He seeks $5 million in damages and asks that Trello be "ban[ne]d from working in the Racine County Jail." Id. at 4. He also

asks that the jail's security system be updated to prevent future assaults by incarcerated persons in the segregation unit.[1] Id.

At the very end of the complaint, the plaintiff alleges that he has asthma and was not supposed to be sprayed with OC spray. Id. at 3. He says he has since experienced "trouble with [his] eyes which cause [him to wear] glasses." Id. He asks the court to order jail staff to pay all his medical bills for eye treatment and to ban staff from using OC spray on incarcerated persons who have asthma. Id. at 4.

C. Analysis

The plaintiff's allegations amount to possible claims of failure to protect and deliberate indifference. These claims may arise under either the Eighth or the Fourteenth Amendment of the U.S. Constitution, depending on whether the plaintiff was a pretrial detainee or a convicted felon at the time of the incident.

The complaint does not reveal the plaintiff's status in December 2021, when the incident occurred. The Wisconsin Circuit Court Access website (WCCA) shows that the plaintiff had several Racine County criminal cases pending during 2019 through 2021. See https://wcca.wicourts.gov/. Relevant here are 2019CF516, 2019CF1146, 2020CF858 and 2021CF1102. WCCA cross-references those four cases, which the state court heard together. In 2021CF1102, a jury found the plaintiff guilty of several charges on October 14,

---

[1] The plaintiff previously filed a complaint about this incident containing similar allegations against the same three defendants. Case No. 22-cv-122-BHL, Dkt. No. 1. District Judge Brett H. Ludwig dismissed the plaintiff's complaint without prejudice because the plaintiff failed to pay the initial partial filing fee despite several orders to do so. Id., Dkt. No. 11.

5

Case 2:22-cv-00849-PP   Filed 11/02/22   Page 5 of 14   Document 15

2021, after a two-day trial. On February 1, 2022, the plaintiff pleaded guilty to charges in 2019CF516, 2019CF1146 and 2020CF858. He was sentenced in all four cases on February 4, 2022.

The Seventh Circuit advises that an incarcerated person who has been convicted (by trial or plea) but has not yet sentenced is treated like a pretrial detainee. He is not considered a convicted prisoner until after he is sentenced for his convictions. See Lewis v. Downey, 581 F.3d 467, 474 (7th Cir. 2009) (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977), and Graham v. Connor, 490 U.S. 386, 394 (1989)); see also Anderson v. Gutschenritter, 836 F.2d 346, 348 (7th Cir. 1988) ("The Eighth Amendment . . . is applicable only to those criminals who are serving a sentence."); Bailey v. Andrews, 811 F.2d 366, 373 (7th Cir. 1987) (same). In 2021CF1102 the plaintiff was found guilty at trial on October 14, 2021. But he was not sentenced on those charges or any others until February 4, 2022—three months after the events alleged in his complaint. That means the court considers the plaintiff to have been a pretrial detainee in December 2021 and analyzes his claims under the Fourteenth Amendment. See Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)).

The Fourteenth Amendment "impose[s] upon prison officials a duty to protect inmates from violent assaults at the hands of fellow prisoners." Klebanowski v. Sheahan, 540 F.3d 633, 637 (7th Cir. 2008) (noting that both the Eighth and Fourteenth Amendments offer this protection). A pretrial detainee claiming an officer failed to protect him from an assault by another

incarcerated person must allege that the officer "intend[ed] to carry out a certain course of actions; negligence is not enough." Kemp v. Fulton Cty., 27 F.4th 491, 497 (7th Cir. 2022). If he alleges that, "the remaining question is whether that course is objectively reasonable. If not, there is a Fourteenth Amendment violation." Id.; see Taylor v. Kenosha Cty. Jail, No. 19-CV-1778-JPS, 2020 WL 3642368, at *2 (E.D. Wis. July 6, 2020) (quoting Gosser v. McCorkle, Case No. 17-CV-3257, 2020 WL 1244470, at *8 (S.D. Ind. Mar. 16, 2020)) (noting that "courts in this circuit have interpreted a pretrial detainee's failure to protect claim to require 'that a defendant acted purposefully, knowingly or recklessly regarding [the] risk of assault, and that their conduct was objectively unreasonable'").

The complaint alleges that another incarcerated person assaulted the plaintiff when the plaintiff left his cell to retrieve his dinner plate. Officer Trello later told the plaintiff that he "F*** up" and did not check the security system to be sure no other cell doors were open before calling the plaintiff out of his cell. Dkt. No. 1 at 3. The complaint does not allege that Trello *intentionally* did not check the security system before calling the plaintiff to retrieve his dinner tray or that he *intended* for the plaintiff to be assaulted. It does not allege that Trello "purposefully, knowingly or recklessly" disregarded the risk of an assault to the plaintiff when he failed to check the security system. Nor does the complaint say that Trello knew the plaintiff was at risk of an assault and acted unreasonably to meet that risk. It suggests that Trello negligently failed to check the security system before he allowed the plaintiff out of his cell, and

7

that that negligence allowed another incarcerated person to assault the plaintiff. Trello's negligence does not constitute a Fourteenth Amendment violation. Kemp, 27 F.4th at 497; Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019). It is unfortunate that this mistake occurred, but the plaintiff has not alleged facts indicating that this was anything more than a mistake. The complaint does not state a claim against Trello for failing to protect the plaintiff from the assault by the other incarcerated person.

The plaintiff's only allegations against Captain Friend are that he wrote a grievance to Friend, who responded that he would look into why the assault occurred. But detainees do not have a substantive right to a specific response to their grievances; they have only a procedural right to file them. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). That means the plaintiff cannot state a claim regarding Friend's response to his grievance, even if it did not resolve the issue. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007).

The complaint does not contain any allegations against Sheriff Schmaling. The plaintiff lists him in the caption of the complaint. Listing the name of the sheriff without alleging what he did or failed to do to violate the plaintiff's rights is not enough to hold him liable under §1983. The plaintiff instead must establish Schmaling's "personal responsibility for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). It is possible the plaintiff seeks to hold Schmaling liable because he is the sheriff of Racine County. But the plaintiff cannot sue Schmaling "for the

unconstitutional conduct of [his] subordinates" merely because Schmaling oversaw the jail at the time of the assault. See Iqbal, 556 U.S. at 676. He instead must explain how Schmaling "through [his] own individual actions, has violated the Constitution." Id. The complaint does not allege how Schmaling violated the plaintiff's rights (or even *that* Schmaling violated his rights). It does not state a claim against Schmaling.

To the extent the plaintiff seeks to proceed on allegations that the defendants violated jail policy by allowing more than one incarcerated person out of his cell at a time, he does not state a claim. The court concludes that the complaint does not state a constitutional claim against Officer Trello for failing to protect the plaintiff from the risk of assault. A violation of jail policy alone does not establish a constitutional violation. See Pulera v. Sarzant, 966 F.3d 540, 551 (7th Cir. 2020). The court will not allow the plaintiff to proceed under §1983 on a potential state-law claim about an alleged violation of the jail's policy.

The plaintiff briefly discusses a separate incident. The plaintiff implies that on an unspecified date, unnamed jail staff sprayed him with a chemical spray called "OC spray." Dkt. No. 1 at 3. He says he has asthma, so he is not supposed to be sprayed with OC spray. Id. These allegations could state a claim of deliberate indifference, which the court also analyzes under the Fourteenth Amendment. See Hardeman, 933 F.3d at 821–22 (citing Kingsley, 576 U.S. at 397). The plaintiff must show "that a defendant's conduct was 'objectively unreasonable.'" Kemp, 27 F.4th at 495 (quoting Hardeman, 933

F.3d at 824). Stated differently, he must show that the defendants' actions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman, 933 F.3d at 822 (quoting Kingsley, 576 U.S. at 398). To do so, he must allege that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Miranda v. Cty. of Lake, 900 F.3d 335, 354 (7th Cir. 2018). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Williams, 937 F.3d at 942; see Kingsley, 576 U.S. at 397.

The complaint provides little detail about this incident. It does not actually say that someone sprayed the plaintiff with OC spray; it says only that he is not supposed to be sprayed with OC spray because he has asthma. If someone *did* spray the plaintiff with OC spray, the complaint does not reveal when they sprayed him, why they sprayed him or whether the person or persons knew the plaintiff was asthmatic when they sprayed him. The court cannot determine from that minimal detail whether the officer or officers who sprayed the plaintiff did so unreasonably and without a legitimate, non-punitive purpose. The complaint does not state a Fourteenth Amendment claim of deliberate indifference against the unnamed officer or officers.

The allegations about the plaintiff being sprayed also are unrelated to the allegations in his complaint about being assaulted by another incarcerated person and the unsuccessful grievances he filed about that assault. A plaintiff

10

may not proceed in the same complaint on unrelated claims asserted against different defendants. See George, 507 F.3d at 607; Fed. R. Civ. P. 18(a) and 20(a)(2). But that is not an issue here; the court is not allowing the plaintiff to proceed on his allegations involving the assault because those allegations do not state a claim for relief. The court will allow the plaintiff to amend his complaint to provide additional detail about his allegations that officers may have sprayed him with OC spray despite his having asthma. The court will not allow him to amend the complaint regarding his allegations that Trello allowed him to be assaulted by another incarcerated person.

The court is enclosing a copy of its amended complaint form and instructions. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. If he does not know the names of those defendants, he may use a "John Doe" placeholder to identify them for now. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights by spraying him with OC spray?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4)

When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint focusing on his claim about being sprayed with OC spray. The amended complaint must comply with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by **December 2, 2022**. If the court receives an amended complaint by the end of the day on December 2, 2022, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$337.12** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank amended complaint form.

Dated in Milwaukee, Wisconsin this 2nd day of November, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**