UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAIVIONTAE TYRELL JOHNSON,

          Plaintiff,

v.                                                                                                                                       Case No. 22-cv-849-pp

CO RUSH and CO TRELLO,

          Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 16)**

On November 2, 2022, the court screened plaintiff Daiviontae Tyrell Johnson's original complaint (which he filed himself) under 42 U.S.C. §1983 and concluded that the complaint did not state a claim that defendant correctional officer Trevor Trello failed to protect the plaintiff from an attack by another incarcerated person. Dkt. No. 15 at 7–8. The court also concluded that the complaint failed to state a claim that unnamed jail staff sprayed the plaintiff with a chemical agent despite him having asthma. Id. at 9–10. The court gave the plaintiff an opportunity "to amend his complaint to provide additional detail about his allegations that officers may have sprayed him with OC spray despite his having asthma." Id. at 11. The court did not allow him "to amend the complaint regarding his allegations that Trello allowed him to be assaulted by another incarcerated person." Id. The court ordered that if the plaintiff wanted to file an amended complaint, he must "do so in time for the court to receive it by December 2, 2022." Id. at 12.

On November 11, 2022, the court received an amended complaint from the plaintiff. Dkt. No. 16. This decision screens the amended complaint.

I.  **Screening the Amended Complaint**

   A.  Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The amended complaint names as defendants correctional officers Rush and Trello, both of whom the plaintiff alleges work at the Racine County Jail. Dkt. No. 16 at 1–2. The amended complaint alleges that on December 2, 2021, while the plaintiff was in segregation at the jail, he was attacked by another incarcerated person. Id. at 2. Officers Rush and Trello responded to the attack, but as they were responding, "CO Rush sprayed [the plaintiff] in the face and eyes with OC spray despite [the plaintiff] telling them 'I have ast[h]ma don[']t spray me.'" Id. The plaintiff alleges he was attacked because Officer Trello "allow[ed] the attacker to keep his door open despite the Policy regarding 1 door being open at a time in seg[regation]." Id. The plaintiff alleges he asked Trello,

"'Why you let dude out to do this to me' or something to that effect." Id. at 2–3. Trello responded, "I fucked up." Id. at 3.

The plaintiff alleges he suffers from asthma, and both officers know he has asthma because he "always saw the nurse for [his] inhaler and before they spray [he] told them 'don[']t spray me I have bad ast[h]ma.'" Id. He says that Officer Rush nonetheless yelled, "stop fighting I[']m gonna spray." Id. The plaintiff says he was able to say "don[']t spray I have ast[h]ma" as he was being attacked, but the officers still sprayed him. Id. He alleges that Officer Rush sprayed him "right in the eyes." Id. The plaintiff asserts that the officers excessively sprayed him, recklessly disregarding his asthma, in violation of his rights under the Fourteenth Amendment. Id. He says the officers' body cameras were recording when he yelled at them not to spray him. Id.

The plaintiff seeks an injunction restricting correctional officers from spraying incarcerated persons who have asthma. Id. at 4. He also seeks $100,000 damages from each defendant and asks the court to order the defendants to pay his medical bills "for the dam[a]ge that was done to [his] eyes" because he now "ha[s] to wear glasses constan[t]ly." Id.

C. Analysis

The court explained in the previous order that in December 2021, when the alleged events occurred, the plaintiff was a pretrial detainee. Dkt. No. 15 at 5–6. That means the court analyzes his claims under the Fourteenth Amendment. Id. at 6. The court also explained that the plaintiff had not stated a Fourteenth Amendment claim against Officer Trello for failing to protect him

from the assault by the other incarcerated person. Id. at 7. The court reached that finding because the plaintiff alleged that Officer Trello told him "he 'F*** up,'" but he did not allege that Trello intentionally allowed the other person to assault the plaintiff or that he intended for the plaintiff to be assaulted. Id. at 7. The court did not allow the plaintiff to amend his complaint regarding his allegations that Officer Trello failed to protect him from that attack. Id. at 11.

Nonetheless, the plaintiff included the same allegations against Officer Trello in the amended complaint. He says that Officer Trello allowed the attacking person's door to be left open in violation of a jail policy advising that only one door be opened at a time in the segregation unit. He again alleges that when he asked Trello why Trello let the other person out to "do this" to the plaintiff, Trello responded that Trello "fucked up." Dkt. No. 16 at 3. For the same reasons explained in the previous order, these allegations do not state a Fourteenth Amendment claim against Officer Trello. At most, the plaintiff's allegations suggest that Officer Trello was negligent in allowing the attacking person's door to remain open, but negligence does not constitute a Fourteenth Amendment violation. See Dkt. No. 15 at 8 (citing Kemp v. Fulton Cty., 27 F.4th 491, 497 (7th Cir. 2022); and Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019)). Nor may the plaintiff proceed on a claim that Officer Trello violated jail policy because a violation of jail policy—standing alone, without anything more—does not establish a constitutional violation. Id. at 9 (citing Pulera v. Sarzant, 966 F.3d 540, 551 (7th Cir. 2020)).

The amended complaint does provide significantly more detail about the plaintiff's claim that officers sprayed him with OC spray (presumably oleoresin capsicum spray, a chemical inflammatory) despite him telling them that he has asthma. As the court explained in the previous order, the court also reviews these allegations under the Fourteenth Amendment. Dkt. No. 15 at 9–10 (citing Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019); and Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). The plaintiff must show "that a defendant's conduct was 'objectively unreasonable.'" Kemp, 27 F.4th at 495 (quoting Hardeman, 933 F.3d at 824). Stated differently, he must show that the defendants' actions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman, 933 F.3d at 822 (quoting Kingsley, 576 U.S. at 398). To do so, he must allege that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Miranda v. Cty. of Lake, 900 F.3d 335, 354 (7th Cir. 2018). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Williams, 937 F.3d at 942; see Kingsley, 576 U.S. at 397.

The plaintiff says both officers knew he suffers from asthma, but they still sprayed him with OC spray when the other incarcerated person was attacking him. He alleges that Officer Rush warned him and the other incarcerated person that he was going to spray them if they did not stop

6

fighting. The plaintiff says that he was being attacked, not fighting, but he was still able to tell the officers not to spray him because he has asthma. He says both officers nonetheless sprayed him, causing lasting damage to his eyes that requires him to wear glasses. He says that both officers' body cameras recorded the incident, including him yelling that he has asthma.

The officers had a non-punitive reason for spraying the plaintiff and the attacking incarcerated person with the chemical spray—they believed the two incarcerated persons were fighting. But if the plaintiff is correct that he told the officers he had asthma, and that they knew beforehand that he is asthmatic, the officers *may* have acted with reckless disregard for the consequences of their actions by spraying the plaintiff. Their decision to spray the plaintiff and his attacker instead of taking other means to stop the "fight," despite knowing that the plaintiff has asthma, may have been excessive in relation to the non-punitive purpose of stopping the fight. Accepting the allegations in the amended complaint as true for the purposes of screening, the court finds that the amended complaint states a plausible claim under the Fourteenth Amendment. The amended complaint initially alleges that only Officer Rush sprayed the plaintiff, but it later alleges that both officers sprayed the plaintiff and that Officer Rush sprayed the plaintiff "right in the eyes." Dkt. No. 16 at 3. The court will allow the plaintiff to proceed on this claim against both officers.

## II. Conclusion

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on Officers Rush and Trello at the Racine

7
Case 2:22-cv-00849-PP   Filed 01/03/23   Page 7 of 8   Document 17

County Jail under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Rush and Trello to file a responsive pleading to the amended complaint within sixty days of service.

The court reminds the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 3rd day of January, 2023.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**