UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAIVIONTAE TYRELL JOHNSON,

                      Plaintiff,

v.                                                  Case No. 22-cv-849-pp

CO RUSH and CO TRELLO,

                      Defendants.

---

**ORDER DENYING AS MOOT PLAINTIFF'S FIRST MOTION TO RECRUIT COUNSEL (DKT. NO. 28) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S SECOND MOTION TO RECRUIT COUNSEL (DKT. NO. 30)**

---

      Plaintiff Daiviontae Tyrell Johnson is proceeding on Fourteenth Amendment claims against two officers at the Racine County Jail. He asks the court to appoint him counsel. Dkt. No. 30.[1] The plaintiff says that he cannot afford counsel, and he "is not able to fully understanding [*sic*] what [he is] doing on [his] own." Id. He says he does not have "the capacity to be coherently to present [*sic*] or represent [him]self for [his] claim." Id. The plaintiff says he has asked attorneys to represent him, and he attached copies of letters he received in response from two firms he wrote to. Dkt. No. 30-1. He says he also contacted the State Bar of Wisconsin Referral Service as one firm suggested, but he received no response. Dkt. No. 30.

---

[1] The plaintiff's first motion seeking recruited counsel was not legible, dkt. no. 28, so the clerk's office directed him to refile a readable version of the motion, dkt. no. 29. The plaintiff complied and filed a legible motion, dkt. no. 30, so the court will deny as moot the plaintiff's first motion for counsel.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chicago Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the

plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience,

3

Case 2:22-cv-00849-PP   Filed 07/07/23   Page 3 of 6   Document 39

intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

  The plaintiff has satisfied the first Pruitt inquiry. He says he contacted attorneys and sought their help in his case, and he even contacted the State Bar of Wisconsin Referral Service that one of the firms suggested he reach out to. The other firm responded that it "do[es] not handle matters such as these unless appointed by the Court to do so." Dkt. No. 30-1 at 2. The plaintiff did not include copies of the letters that he sent to the firms asking them to represent him, so the court cannot determine how well he explained his claims or his need for an attorney. Nor did either firm weigh in on the merits of the plaintiff's case; both simply declined to take his case and suggested alternate resources for him to obtain a lawyer. The plaintiff's efforts show that he sufficiently attempted to obtain a lawyer on his own before asking for the court's assistance.

  But the plaintiff has not satisfied the second Pruitt inquiry. The plaintiff says he cannot afford an attorney and does not feel capable of litigating this lawsuit on his own. Those alleged difficulties unfortunately are common for incarcerated persons, and the court is well aware of the difficulty incarcerated persons face litigating cases on their own. But as the court noted above, the Constitution does not entitle the plaintiff to an attorney to represent him in

this civil case, and there are not enough attorneys willing and able to represent plaintiffs who file lawsuits themselves. That the plaintiff is on his own in a state facility with scarce resources is, unfortunately, a situation that the court sees very often; these issues are not a sufficient to justify the court recruiting counsel at this stage.

Nor has the plaintiff demonstrated that he is one of those self-represented litigants most in need of an attorney to effectively litigate this case. This case is still at an early stage. But the plaintiff has had no trouble complying with court orders to pay the initial partial filing fee, file the necessary paperwork before screening and file an amended complaint explaining his claims and naming those responsible. The allegations in the plaintiff's amended complaint are straightforward and easy to follow. He says the officers sprayed him with pepper spray while attempting to subdue another incarcerated person, despite him telling them that he has asthma. He says the officers had body-worn cameras that recorded him telling them not to spray him and them spraying him anyway. This is not a complex claim; it does not require expert witnesses or medical evidence. The plaintiff has his side of the story, which he says will be corroborated by video evidence, and the officers likely will have their side of the story. At this point, all the plaintiff needs to do is provide his side of the story. The court will give him additional instructions on how he must do that as the case progresses. Nothing in the plaintiff's amended complaint and other filings to date suggests that he is incapable of litigating this lawsuit on his own.

5

The court will be flexible in giving the plaintiff any reasonable additional time he requests for him to litigate this lawsuit. As the case progresses, the legal and factual issues may become too complex for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If that occurs, and if additional time does not resolve the issue, it may be appropriate to recruit counsel to represent the plaintiff then. But at this stage of the case, the court finds that the plaintiff has not demonstrated that he requires the assistance of counsel to present his case. The court will deny the plaintiff's motion to appoint counsel without prejudice. That means that he may renew his request for assistance later in this case, if necessary.

The court **DENIES AS MOOT** the plaintiff's first (illegible) motion to recruit counsel. Dkt. No. 28.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's second motion to recruit counsel. Dkt. No. 30.

Dated in Milwaukee, Wisconsin this 7th day of July, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**